Frank DOUGLAS, Plaintiff-Appellant,

v.

Marvin ANDERSON, Raymond Hanson, Board of Directors, Hastings College of Law and Hastings Service Foundation, Inc., a corporation, Defendants-Appellees.

No. 78–1121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1980.

Decided Sept. 17, 1981.

Jerome Berg, San Francisco, Cal., for plaintiff-appellant.

John J. Vlahos, Robert W. Tollen, San Francisco, Cal., argued, for defendants-ap-

pellees; D. Wayne Jeffries, Chickering & Gregory, San Francisco, Cal., on brief.

Before HUG and SCHROEDER, Circuit Judges, and BURNS *, District Judge.

HUG, Circuit Judge:

Frank Douglas brought this action against Marvin Anderson, Raymond Hanson, Hastings Service Foundation, Inc., and the Board of Directors for Hastings College of Law (collectively, "Hastings"). During the period relevant to this action, Anderson was the Dean of Hastings College of Law, and Hanson was the President of the Board of Trustees for the Hastings Service Foundation. Douglas asserts that Hastings terminated his employment as manager of the law school bookstore because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. In addition, Douglas asserts a pendent state claim for breach of contract.

After presentation of Douglas's case-in-chief before a jury, the district court directed a verdict in favor of Hastings on both claims. We affirm.

## I

### FACTS

Douglas is experienced as a dealer in law books and as a consultant to law libraries. In 1971, Anderson requested Douglas to conduct a study to determine the feasibility of establishing an on-campus bookstore for the College of Law. After conducting the study, Douglas concluded that a bookstore could be successful. Hastings Service Foundation, Inc., a nonprofit corporation, was established to operate the bookstore. In an oral agreement, Anderson hired Douglas to act as manager of the bookstore.

Douglas worked as manager of the bookstore from August 1971 until September 1975. In the Spring of 1975 Hastings Service Foundation employed an accounting firm to conduct an audit of the financial books and records of the bookstore. The auditors discovered several substantial problems in the financial operations and management of the bookstore under Douglas's control. The audit report concluded that Douglas was performing unsatisfactorily as business manager of the bookstore. The audit report and Douglas's performance were discussed by the Board of Trustees for the Hastings Service Foundation. The Board discharged Douglas on September 2, 1975. He was 54 years-old at the time. Douglas was replaced by Louise Meecham, age 49, who had worked in the bookstore as a cashier during the period of Douglas's employment.

Douglas brought this action, alleging age discrimination and breach of the oral employment agreement. After the presentation of Douglas's case-in-chief, Hastings moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50. The district court granted the motion on both claims. With respect to the ADEA claim, the court concluded that Douglas had not introduced substantial evidence in support of his assertion that he was dismissed because of his age. On the contract claim, the district court concluded that there was insufficient evidence to support a jury finding that Douglas had a contract for employment until retirement; the court ruled that the agreement thus was terminable at will. Douglas appeals.

## II

### ADEA CLAIM

■ The ADEA provides that it "shall be unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). However, the statute specifically provides that it is not unlawful for an employer to base em-

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

ployment decisions on "reasonable factors other than age," or to discharge an individual "for good cause." 29 U.S.C. § 623(f)(1), (3). The plaintiff has the ultimate burden of proving that age was a "determining factor" in the employer's allegedly unlawful conduct. *Kelly v. American Standard, Inc.,* 640 F.2d 974, 984 (9th Cir. 1981).

Because Douglas relies on a disparate treatment theory,[1] proof of discriminatory motive on the part of Hastings is essential to Douglas's action. *See Golden v. Local 55, Firefighters,* 633 F.2d 817, 821 (9th Cir. 1980) (Title VII suit).

■ The Supreme Court recently summarized and clarified its earlier statements regarding the allocation of burdens and order of proof in a Title VII case alleging discriminatory treatment:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981) (cita-

tions omitted). These basic standards apply as well to litigation of a claim arising under the ADEA. *See Kelly v. American Standard, Inc.,* 640 F.2d at 984, *quoting Smith v. Flax,* 618 F.2d 1062, 1066 (4th Cir. 1980).

In this case, Douglas's claim of prima facie discrimination, Hastings's rebuttal, and Douglas's claim of pretext were fully explored during the case-in-chief. Consequently, the district court properly entertained Hastings's motion for a directed verdict at the close of the presentation of plaintiff's evidence. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir. 1979). We will affirm the district court's order granting a directed verdict only if "the evidence when viewed most favorably to the party against whom the motion is directed cannot support a verdict in that party's favor." *Traver v. Meshriy,* 627 F.2d 934, 939–40 (9th Cir. 1980).

### A. *Prima Facie Case*

To establish a prima facie case of age discrimination, Douglas had the burden of proving by a preponderance of the evidence that he was within the protected class, that he was performing satisfactorily as manager of the bookstore, and that he was discharged "under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 215 (footnote omitted). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Court set forth one way in which a Title VII claimant can use circumstantial evidence to establish a prima facie case of racial discrimination in hiring:[2]

This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications,

---

1. Discrimination may also be shown on a disparate impact theory, which focuses on the discriminatory consequences of an employment policy that is neutral on its face. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

2. A prima facie case may be established more simply through the production of direct evidence of discrimination. *See Loeb v. Textron,* 600 F.2d 1003, 1014 n.12, 1016–17 (1st Cir. 1979). There is absolutely no direct evidence of age discrimination in this case.

he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

(footnote omitted). The *McDonnell Douglas* standards are flexible and can be modified to accommodate a claim of discriminatory discharge. *See id.* at 802 n.13, 93 S.Ct. at 1817 n.13; *Loeb v. Textron, Inc.*, 600 F.2d at 1013. Moreover, an adaptation of the *McDonnell Douglas* standards provides a sensible method of evaluating the evidence in an action brought under the ADEA, as well as Title VII. *Id.* at 1015–16; *Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir. 1980).

Hastings urges us to adopt the elements of a prima facie case of age discrimination that were set forth by the Fifth Circuit in *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977). In *Price*, the court modified the fourth element of the *McDonnell Douglas* test by apparently requiring a discharged employee to prove that "he was replaced with a person outside the protected group." *Id.* If we were to agree with Hastings that *Price* sets forth the minimum elements of prima facie proof in an ADEA suit, then Douglas would have failed to establish a prima facie case, because he was replaced by a person who was within the class protected by the ADEA.[3]

We reject Hastings's argument. The elements of proof articulated in *Price* add a gloss that is absent from *McDonnell Douglas*. *See Loeb v. Textron, Inc.*, 600 F.2d at 1012–13; *Smith v. World Book-Childcraft International, Inc.*, 502 F.Supp. 96, 99–100 (N.D.Ill.1980). In fact, the Fifth Circuit itself has rejected the interpretation of *Price* now urged by Hastings. In *McCuen v. Home Insurance Co.*, 633 F.2d 1150 (5th Cir. 1981), the court ruled that failure to meet the standards set forth in *Price* "does not foreclose a plaintiff from showing discrimination," suggesting that *Price* establishes one, but not the only, method of proving a prima facie case. *Id.* at 1151; *see also McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753 (5th Cir. 1980). Other cases similar to *Price* are subject to the same interpretation. *See Smith v. World Book-Childcraft*, 502 F.Supp. at 100 n.4.[4]

A formula based on *McDonnell Douglas* must be adapted to the facts of each case. *See Hagans v. Andrus*, 651 F.2d 622, 624–625 (9th Cir. 1981). In determining whether a prima facie case has been established, the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination. *See Burdine*, 450 U.S. at 251–256, 101 S.Ct. at 1093–1095, 67 L.Ed.2d at 215–27. In an ADEA action, that may be accomplished by producing evidence that identifies age as the "likely reason" for an adverse employment decision. *See White v. City of San Diego*, 605 F.2d 455, 458 (9th Cir. 1979) (sex discrimination).

In an ADEA action based on discriminatory discharge, a prima facie case normally can be established by proving that

---

**3.** At times relevant to this litigation the ADEA protected individuals between the ages of 40 and 65. 29 U.S.C. § 631 (1976). Douglas's replacement was 49 years of age at the time of Douglas's discharge. The statute was amended in 1978 to expand its coverage to individuals between the ages of 40 and 70.

**4.** Indeed, in *Kelly v. American Standard, Inc.*, 640 F.2d 974, 980 (9th Cir. 1981), we listed "replacement by one outside the protected class" as an element of the prima facie case in an age discrimination suit. However, in that case we simply emphasized that direct proof of state of mind was not an element of the prima facie case; we did not set forth the minimum prerequisites for a prima facie case. In a more recent case, this circuit indicated that an em-

ployee could establish a prima facie case even when that employee was replaced by someone within the protected age class. *Sutton v. Atlantic Richfield*, 646 F.2d 407 (9th Cir. 1981). In some circumstances it makes no sense to require proof of replacement by a younger employee. For example, in the case of a reduction in the workforce, a discharged employee may not be replaced at all; yet, the employee may have been selected for discharge in a discriminatory manner. *See McCuen v. Home Insurance Co.*, 633 F.2d 1150, 1151 (5th Cir. 1981); *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir. 1980); *see also Haydon v. Rand Corp.*, 605 F.2d 453, 454 n.1 (9th Cir. 1979).

the plaintiff (i) was a member of the protected class, (ii) was performing his job in a satisfactory manner, (iii) was discharged, and (iv) was replaced by a substantially younger employee with equal or inferior qualifications. If the replacement is only slightly younger than the plaintiff, then it is less likely that an inference of discrimination can be drawn. However, replacement by even an older employee will not necessarily foreclose prima facie proof if other direct or circumstantial evidence supports an inference of discrimination. *See Loeb v. Textron*, 600 F.2d at 1013 n.9 (older person might have been hired to ward off threatened lawsuit); *Smith v. World Book-Childcraft*, 502 F.Supp. at 102. In each case the trier must determine whether the evidence identifies age as the likely reason for the discharge. *See Hagans v. Andrus*, 651 F.2d at 625.

In this case, Douglas proved that he was a member of the protected class, was discharged, and was replaced by a person five years younger than he. Further, he produced substantial evidence of satisfactory job performance. This was sufficient to establish a prima facie case and shift the burden to Hastings to produce evidence of a legitimate nondiscriminatory reason for terminating Douglas's employment. For the reasons discussed below, however, we find that Hastings produced convincing rebuttal evidence, which was not placed into question by a showing of pretext and which would have precluded a reasonable jury from finding age discrimination.[5]

### B. *Rebuttal*

Because Douglas established a prima facie case at trial, a presumption of discrimination was raised, thereby shifting the burden to Hastings to produce evidence that Douglas was discharged for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (footnote omitted). The production of this evidence would be sufficient to raise a question of fact for resolution by the jury, with the ultimate burden of persuasion on the plaintiff. *Id.* In order to sustain the directed verdict, however, a defendant must do more; it must establish that a jury could not reasonably find that age discrimination was a determining factor in his discharge. Through cross-examination of Douglas's witnesses, Hastings presented convincing evidence that Douglas was discharged because of his financial mismanagement of the bookstore, a legitimate basis for discharge under 29 U.S.C. § 623(f)(1), (3).

The record clearly shows that members of the Board of Trustees for the Hastings Service Foundation were dissatisfied with the manner in which Douglas was managing the bookstore. The results of an audit investigation conducted in 1975 both demonstrated that these concerns were justified and intensified the dissatisfaction. Among other things, the investigation revealed that Douglas had allowed bills to become delinquent, had damaged the bookstore's cash-flow position by conducting his own personal law book business through the bookstore, and had caused the preparation of misleading financial reports that exaggerated the profitability of the bookstore. A prelimi-

5. The issue of satisfactory job performance permeates the prima facie case as well as the rebuttal and pretext issues. In establishing a prima facie case, Douglas need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue. However, Hastings in rebuttal produced substantial evidence of unsatisfactory job performance as the legitimate nondiscriminatory reason for its action. The focus of the inquiry, at this point, was not a determination of whether Douglas was in fact performing his job adequately, but rather, whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of his employer. This differs from a determination that just cause existed for the termination because of unsatisfactory job performance, which would necessitate a finding that his job performance was unsatisfactory. In the case at hand, we are concerned not with whether Hastings was correct in its determination that Douglas's job performance was unsatisfactory, but only with whether this was the real reason for the termination and not a pretext for age discrimination.

nary audit report to the Board of Trustees stated that Douglas was performing in an unsatisfactory manner as business manager of the bookstore. Trial testimony indicated that these problems were communicated to Douglas and that they formed the basis of the decision to discharge him.

■ We conclude that Hastings did more than raise an issue of fact in satisfaction of its burden of production. The evidence that Douglas was discharged for a legitimate, nondiscriminatory reason is overwhelming and completely undermines any inference of discrimination that may have been raised through circumstantial evidence presented by Douglas.

### C. Pretext

■ Douglas had the opportunity to prove that Hastings's apparent dissatisfaction with his job performance was a pretext for age discrimination. See Burdine, 450 U.S. at 254–257, 101 S.Ct. at 1094–1095, 67 L.Ed.2d at 216–17. He could have done that either directly by proving that Hastings more likely was motivated by a discriminatory reason, or indirectly by showing that Hastings's rebuttal theory was "unworthy of credence." Id. Douglas advances several theories of pretext.

Douglas argued that the real reason for his discharge was his criticism of certain financial transactions conducted by Hastings and discovered by Douglas in the course of his employment. However, this theory does nothing to support Douglas's claim that he was discharged on the basis of age, but merely presents an alternate reason not based on age. The reason for a business decision need not meet the unqualified approval of the judge or jury, so long as it is not based on age. See Loeb v.

Textron, 600 F.2d at 1012 n.6, 1019. We reject as wholly speculative Douglas's assertion that his discovery of the allegedly improper transactions was facilitated by factors directly related to age; Douglas did not show that the general knowledge of financial matters that assertedly enabled him to question the transactions is held to a disproportionate degree by older workers.

Douglas also claims that Hastings discharged him for the purposes of denying him expected retirement benefits and replacing him with a person who earned a much lower salary. However, aside from Douglas's unsupported conclusion on the matter, there is absolutely no direct or circumstantial evidence that he was discharged to avoid the payment of retirement benefits or that his relatively high salary was related to his age. In fact, the record indicates that the difference between Douglas's salary and that of his replacement was due to factors other than their respective ages.[6]

In a further effort to show pretext, Douglas complains that his replacement, Louise Meecham, performed no better than he but retained her job. He bases this assertion on evidence that an inspection of the bookstore in August 1976 resulted in criticism of the physical outlay and sales practices of the bookstore under Meecham's control. This evidence was insufficient to raise a serious challenge to Hastings's rebuttal. First, it does not adequately address the theory advanced by the rebuttal evidence. The evidence shows that Douglas was discharged primarily because of perceived misdealings on his part concerning financial and accounting matters, and only partly because of his shortcomings in maintaining effective marketing practices within the bookstore. In addition, unrebutted evi-

---

**6.** Douglas does not assert that Hastings engaged in a generalized assumption that older workers cost more to employ than younger workers. Cf. Geller v. Markham, 635 F.2d 1027, 1034 (2d Cir. 1980) (citing 29 C.F.R. § 860.103(h) (1979)). Instead, Douglas argues that Hastings made an individualized assessment that he cost too much to employ. Because there is no evidence tending to show a direct relationship between Douglas's age and

his relatively high salary, we need not decide in what circumstances an employer may lawfully engage in such a cost assessment when the relationship between age and salary is established. See generally Note, The Cost of Growing Old: Business Necessity and the Age Discrimination in Employment Act, 88 Yale L.J. 565 (1979); Haydon v. Rand Corp., 605 F.2d 453, 455 (9th Cir. 1979).

dence shows that members of the Board of Trustees attributed the poor inspection report to residual problems caused by Douglas's prior mismanagement; Meecham eventually developed the bookstore into a very profitable operation. The jury could not reasonably draw an inference of age discrimination from Hastings's refusal to discipline Meecham for failing to make better progress during her first year on the job.

■ Finally, Douglas contends that the district court improperly limited discovery and excluded evidence concerning Hastings's accounting practices. Douglas sought to show that the Board of Trustees for the Hastings Service Foundation judged Douglas's performance in the bookstore through the use of accounting standards that were more demanding than the standards adhered to by the Board of Directors for Hastings College of Law in the administration of certain funds. This evidence would have had little relevance to the validity of the rebuttal theory, and its introduction could have resulted in substantial confusion and waste of time on a collateral matter. The district court did not abuse its discretion in limiting discovery, see *White v. City of San Diego*, 605 F.2d at 461, or in excluding the evidence, see Federal Rules of Evidence 402, 403.

In sum, Douglas did not produce substantial evidence in support of his claim that Hastings's dissatisfaction was merely a pretext for age discrimination.

### D. *Propriety of Directed Verdict*

■ We recognize that summary procedures should be used judiciously, particularly in cases involving issues of motivation or intent. *Cf. Haydon v. Rand Corp.*, 605 F.2d

453, 455 n.2 (9th Cir. 1979) (summary judgment). On the other hand, we agree with the Seventh Circuit that one purpose of the allocation of burdens of proof and production in Title VII and ADEA actions is to help district courts to identify meritless suits and to stop them short of full trial. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219–20 (7th Cir. 1980). The ADEA is not intended as a vehicle for general judicial review of business decisions. *Id.* at 1223 (incorporating opinion of district court). We conclude that the evidence in this case, viewed most favorably to Douglas, cannot support a finding of age discrimination. Therefore, the district court properly directed a verdict in Hastings's favor on the ADEA claim.[7] *Cf. Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir. 1980) (affirming directed verdict for defendant); *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir. 1980) (affirming judgment notwithstanding the verdict).

### III

### CONTRACT CLAIM

■ Appellant contended that he had an oral contract with Hastings that he was to be employed until he was eligible for retirement. Hastings denied any such agreement. The district court ruled that there was no evidence from which the jury could find that such a contractual agreement existed. The only evidence produced by Douglas to establish the existence of such an oral contract was his statement that the matter was discussed with Anderson. Even Douglas did not state that Anderson agreed he was to be employed until he was eligible for retirement. The district court therefore correctly directed a verdict on this claim.

7. In proper circumstances, the evidence establishing a prima facie case of discrimination could support a jury verdict for the plaintiff if the rebuttal evidence is discredited by the jury even if no further evidence is introduced in support of a pretext claim. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, n.10, 101 S.Ct. 1089, 1095, n.10, 67 L.Ed.2d 207, 216 n.10 (1981). However, those circumstances are not present in this case, because although we have found that a prima facie case was established, the rebuttal evidence was overwhelming and was not met with substantial evidence of pretext. Therefore, we agree with the district court that no reasonable jury could find that Douglas was the victim of age discrimination.

The judgment of the district court is AFFIRMED.